UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Thomas Ray Jackson,

Plaintiff,

vs.                                    REPORT AND RECOMMENDATION

Prarie [sic] Correctional Facility,
Warden Wengler, Assistant
Warden Siedl,Mn. Dept of
Corrections/Commisioner [sic],
Reena Abraham/Contract
Co-odenator [sic],

Defendants.              Civ. No. 07-3587 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge
pursuant to a general assignment, made in accordance with the provisions of Title 28
U.S.C. §636(b)(1)(B), upon the Plaintiff's "Complaint For Violation Of Civil Rights
Under 42 U.S.C. 1983," see, Docket No. 1, and his application for leave to proceed
in forma pauperis ("IFP").[1] See Docket No. 2. For reasons which follow, we

---

[1]The Plaintiff did not tender the required filing fee with his Complaint, but instead,

(continued...)

recommend that the Plaintiff's IFP application be denied, and that the action be summarily dismissed.

## II. Factual Background

The Plaintiff is a prisoner of the State of Minnesota, who is presently incarcerated at the Prairie Correctional Facility ("PCF"), in Appleton, Minnesota. PCF is owned and operated by Corrections Corporation of America ("CCA"). According to the Plaintiff's Complaint, CCA has entered a series of one-year contracts with the Minnesota Department of Corrections ("DOC"), by which CCA agrees to provide housing for some Minnesota prison inmates at PCF. See, Complaint, "Statement of Claim," supra at ¶¶ 1-2.

The Plaintiff alleges that, when a PCF inmate is assigned to segregated confinement for disciplinary reasons, he is treated differently from inmates housed at State-operated prisons who receive similar discipline. The Complaint describes

---

[1](...continued)
filed an Application seeking leave to proceed in forma pauperis, ("IFP"). See Docket No. 2. It appears from the Plaintiff's IFP Application that he may be unable to pay even the initial partial filing fee that prisoners are required to remit pursuant to Title 28 U.S.C. §1915(b)(1). Thus, we find, for present purposes, that the Plaintiff has "no assets and no means by which to pay the initial partial filing fee," see, Title 28 U.S.C. §1915(b)(4), and that this matter should proceed directly to the initial screening process prescribed by Section 1915A.

several alleged differences, between the disciplinary practices at PCF, and those at State-operated prisons.[2]

First, a PCF inmate, who is on disciplinary detention ("DD"), is allegedly entitled to one (1) hour out of his cell for only five (5) days a week, while other DOC inmates on DD are allegedly entitled to one (1) hour out of their cells seven (7) days a week.  Id. at ¶¶ 9-10.  PCF inmates assertedly are allowed only one (1) telephone call every thirty (30) days, while other DOC inmates purportedly can use the phone at any time, during their one (1) hour per day in "the dayroom."  Id.  "Pencil sharpening" and "letters" allegedly are "discretionary" for PCF inmates on DD, but "mandatory" for other DOC inmates.  Id.

The Plaintiff further maintains that inmates at PCF receive less favorable treatment than other DOC inmates if they receive disciplinary sanctions that cause them to be reclassified to a "close" security level, which is the most restrictive security

---

[2]It appears that the Plaintiff's only first-hand knowledge about the conditions at Minnesota's State-operated prisons comes from some prior experience at just one such institution -- the Minnesota Correctional Facility, at Faribault, Minnesota ("MCF-Faribault").  See, Complaint, Docket No. 1, "Statement of Claim," ¶ 7.  The Plaintiff apparently assumes that the conditions at all other State-operated prisons are the same as those at MCF-Faribault.  For present purposes, we indulgently accept the Plaintiff's somewhat dubious assumption.

designation.[3]  The Plaintiff alleges that, in State-operated facilities, an inmate who is reclassified to the close security level is promptly transferred to "an appropriate facility" which, presumably, means a facility that is designated for inmates assigned to the close security classification.  Id. at ¶ 14.  However, if a PCF inmate is reclassified to the close security level, he assertedly may have to wait in segregated confinement for up to six (6) months before being transferred to an appropriate facility.  Id. at ¶¶ 15, 22.  The Plaintiff believes that prison officials deliberately delay the transfer of PCF inmates to close security facilities, and keep such inmates in segregated confinement while they wait to be transferred, in order to discourage them from trying to get transferred out of PCF by incurring disciplinary sanctions.  Id. at ¶¶ 26-27.

Based upon these assertions, the Plaintiff is attempting to sue two (2) prison officials at PCF, and two (2) DOC officials.  The named Defendants are:  1) Warden Wengler, the Warden at PCF, 2) Assistant Warden Siedl, who is, apparently, an assistant warden at PCF, 3) Reena Abraham, a DOC employee who is identified as a

---

[3]According to the Plaintiff, Minnesota prison inmates are classified "min[imum]-med[ium]-close" for security purposes.  Complaint, Docket No. 1, "Statement of Claim," ¶ 13.

"contract co-odenator" [sic], and presumably is responsible for coordinating the DOC's contractual arrangements with PCF, and 4) the Commissioner of the DOC.

The Plaintiff claims that the named Defendants are violating the constitutional rights of PCF inmates who commit disciplinary infractions.  He contends that the Defendants are violating those inmates' rights under the Eighth Amendment's "Cruel And Unusual Punishments" Clause, the Fourteenth Amendment's Due Process Clause, and the Fourteenth Amendment's Equal Protection Clause.  The Complaint seeks "injunctive relief assuring PCF/MNDOCs compliance with Equal Protection/ Creual [sic] and unusual clauses of the Constitution and issue Monetary Punitive Damages for said violations."  Complaint, supra at p. 3, §V.

## III.  Discussion

Since the Plaintiff is a prisoner, who is seeking redress from governmental employees,[4] his pleading is subject to preliminary "screening" pursuant to Title 28 U.S.C. §1915A.  Section 1915A, which is part of the Prison Litigation Reform Act of

---

[4]Defendants Reena Abraham, and the Minnesota Commissioner of Corrections, are employees of the State of Minnesota, and the Plaintiff apparently believes that the other two Defendants, Warden Wengler and Assistant Warden Siedl, should be treated as "State actors" for purposes of this lawsuit, so they can be sued under Title 42 U.S.C. §1983.

1995 ("PLRA"), requires Federal Courts to screen the pleadings in every civil action, that is commenced by a prisoner against governmental entities and/or employees, "before docketing, if feasible or, in any event, as soon as practicable after docketing." Title 28 U.S.C. § 1915A(a).   Through such a screening process, the Court must determine which aspects of the pleading are actionable, and should be allowed to proceed.   If the pleading fails to state a legally cognizable claim, then the action must be dismissed.   See, Title 28 U.S.C. §1915A(b)(1).   Applying Section 1915A here, we find that the Plaintiff has failed to state any actionable claim for relief, for the reasons which follow.

   A.   Lack of Standing.   The Complaint only describes various general conditions and practices that allegedly exist at PCF.   There are no allegations showing that the Plaintiff has been **personally** affected by any of those conditions or practices.[5]

---

[5]The Plaintiff does allege that the sink in his own cell has "dripped for 30 days, without repair" but, if he had been confined in a State-operated facility, "it would have been repaired within a few days."   Complaint, Docket No. 1, "Statement of Claim," ¶12.   However, the Plaintiff clearly cannot sustain any Federal civil rights claim, against any of the named Defendants, based only on that allegation.

However, a prisoner cannot rely solely on the experiences of other inmates to support his own lawsuit.  See, Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999)(a prisoner failed to state an actionable claim for relief because he "failed to allege that it was he, rather than other prisoners, who was subjected to certain allegedly unconstitutional conditions").  "A federal court's jurisdiction * * * can be invoked only when **the plaintiff himself** has suffered 'some threatened or actual injury resulting from the putatively illegal action.'"  Warth v. Seldin, 422 U.S. 490, 499 (1975), quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973)[emphasis added].  "A prisoner must allege a personal loss[;] * * * [he] lacks standing to bring claims alleging mistreatment of other prisoners."  Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); see also, Hooker v. Pazera, 1996 WL 476658 at *4 (N.D. Ind., August 19, 1996)(prisoner "has no standing to assert the rights of other prisoners and may only challenge violations of his own rights")(citing cases).

Since the Plaintiff has not alleged that he has been, or necessarily will be, **personally** affected by any of the supposedly unconstitutional conditions, and practices, that are described in his Complaint, he has failed to state a cause of action upon which relief could be granted, due to lack of standing.

B.   <u>Lack of Facts Showing Constitutional Violations</u>.  We further find that, even if the Plaintiff had alleged that he was somehow personally affected by the conditions and practices described in his Complaint, he still would not have pled an actionable civil rights claim.   The facts alleged in the Plaintiff's Complaint do not describe any conditions or practices that violate the Eighth Amendment, the Due Process Clause, or the Equal Protection Clause.

1.   <u>Eighth Amendment</u>.  The Plaintiff apparently believes that placing a prisoner in segregated confinement, and limiting his access to privileges such as books, and writing materials, for extended periods of time is prohibited by the Eighth Amendment.  However, he is mistaken.

Under the Eighth Amendment, it is well-settled that a prisoner's confinement must not result in serious deprivation of his basic human needs or of a minimal, civilized measure of life's necessities.   See,  <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993); <u>DeShaney v. Winnebago County Department of Social Services</u>, 489 U.S. 189, 199-200 (1989); <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976); see also, <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981).  As stated, the focus is on "basic human needs -- e.g., food, clothing, shelter, medical care and reasonable safety."   <u>Helling v. McKinney</u>, supra at 32, citing <u>DeShaney v. Winnebago County Department of Social</u>

Services, 489 U.S. 189, 200 (1989); see also, Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995); Brown v. Nix, 33 F.3d 951, 955 (8th Cir. 1994). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) [internal quotes and citations omitted].

However, it is well-settled that segregated confinement per se, even for extended periods of time, is not considered to be "cruel and unusual punishment" for Eighth Amendment purposes. See, Brown v. Nix, supra at 955 (prisoner's nine-year term of segregated confinement for multiple disciplinary infractions did not violate the Eighth Amendment); see also, Herron v. Schriro, 11 Fed.Appx. 659, 662, (8th Cir. 2001)(upholding district court's rejection of prisoner's Eighth Amendment claim based on thirteen years of segregated confinement), cert. denied, 534 U.S. 1059 (2001). Moreover, in his Complaint, the Plaintiff does not claim that all privileges are suspended when PCF inmates are placed in segregation, for he acknowledges that those prisoners are provided with one (1) book per day, are entitled to receive a telephone call every thirty (30) days, and receive five (5) hours out of their cells a week. Absent allegations of conditions that fail to meet basic human needs, the Plaintiff's claim, under the Eighth Amendment, must fail.

2. <u>Due Process</u>.  The Plaintiff's Complaint also fails to state an actionable Due Process claim, because there are no factual allegations describing any "atypical and significant hardship * * * in relation to the ordinary incidents of prison life."  <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995); see also, <u>Moorman v. Thalacker</u>, 83 F.3d 970, 972 (8th Cir. 1996)(prisoner Due Process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences").

In determining whether there has been a deprivation of due process rights, a Court's first step is to determine whether there is a recognizable liberty or property interest at stake.  See, <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 571 (1972).  Here, the threshold consideration is whether the Plaintiff has a protected liberty interest in being free from placement in administrative segregation, reclassification, or a transfer to an institution with a higher security setting.  Only if that threshold question is answered in the affirmative, do we then inquire whether the procedures attendant to that deprivation were constitutionally sufficient.  See, <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' * * *, or it may arise from an expectation or interest created by state law or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, the Supreme Court has unequivocally held that "[t]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Id. at 221-22, citing Meachum v. Fano, 427 U.S. 215, 225 (1976). In so holding, the Court has recognized, as follows:

> Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

Meachum v. Fano, supra at 225; see also, McCune v. Lile, 536 U.S. 24, 39 (2002)("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999)("Prison authorities have a great deal of discretion in running their institutions, and such discretion normally outweighs any interest that an individual prisoner may have in remaining housed in a particular prison."), citing Sanders v. St. Louis County, 724 F.2d 665, 668 (8th Cir. 1983); Shaheed-Muhammad v. Dipaolo, 393 F. Supp.2d 80, 105 (D. Mass. 2005)("Prison administrators are afforded 'extremely broad' latitude in making transfer decisions.").

Similarly, "[t]he Due Process Clause does not in itself create a liberty interest in a particular prison classification," Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994), citing Nash v. Black, 781 F.2d 665, 668 (8th Cir. 1986), nor does it create an interest, in an inmate, of being free from a temporary placement in administrative segregation. See, Sandin v. Conner, 514 U.S. 472, 486 (1995).

Accordingly, it is well-settled that segregated confinement alone is not an "atypical and significant hardship" that can give rise to a constitutionally protected liberty interest that implicates the right to Due Process. See, Portley-el v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002)("We have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin."); Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir.1996)(punitive isolation was not atypical and significant deprivation implicating prisoner's Due Process rights, despite restrictions on mail, telephone access, visitation, and commissary privileges); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003)(reiterating that "demotion to segregation, even without cause, is not itself an atypical and significant hardship"); Howard v. Collins, 129 F.3d 121 at *1 (8th Cir. 1997)[Table Decision] (eight month stint in "ad seg" did not give rise to an actionable Due Process claim).

Since the Plaintiff's Complaint does not describe any "atypical and significant hardship," as contemplated in Sandin, the Plaintiff has not identified a liberty interest that warrants Due Process protection.   Therefore, the Complaint does not state an actionable Due Process claim.

3.    Equal Protection.   Finally,   the   allegations   in the Plaintiff's Complaint cannot support an Equal Protection claim.   In order to succeed on an Equal Protection claim, a claimant must prove that he has been treated differently from other similarly-situated individuals, either by operation of a State law or regulation, or by a decision of a State official.   See, Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000)("In general, the Equal Protection Clause requires that state actors treat similarly situated people alike."), cert denied, 534 U.S. 816 (2001), citing Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995); Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 984 (8th Cir. 2004)("The Fourteenth Amendment requires that the government 'treat similarly situated people alike,' a protection that applies to prison inmates."), cert. denied, 543 U.S. 991 (2004), citing Rouse v. Benson, 193 F.3d 936, 942 (8th Cir.1999).

However, it is not enough for an Equal Protection claimant to show that he has been treated differently from others who are similarly-situated.   He must also show that

- 13 -

there is **no rational basis** for the dissimilar treatment at issue.  See, <u>Hosna v. Groose</u>, 80 F.3d 298, 304 (8th Cir. 1996)(to prevail on an Equal Protection claim, "[i]nmates must prove that '(1) persons who are similarly situated are treated differently by the government, and (2) [that] the government [has failed] to provide a rational basis for the dissimilar treatment'"), cert. denied, 519 U.S. 860 (1996), quoting <u>Moreland v. United States</u>, 968 F.2d 655, 660 (8th Cir. 1992), cert. denied, 506 U.S. 1028 (1992). The "rational basis" test has been described as a "highly deferential" standard.  See, <u>Batra v. Board of Regents of the University of Nebraska</u>, 79 F.3d 717, 721 (8th Cir. 1996).[6]

Here, the Plaintiff claims that inmates at PCF are being deprived of their constitutional right to Equal Protection because they are allegedly treated differently

---

[6]There are no allegations in the Complaint which suggest any discrimination based on any "suspect classification," such as race, or any deprivation of an established "fundamental liberty interest."  Therefore, the Plaintiff's Equal Protection claim is properly analyzed under the more deferential "rational basis" standard, rather than the more rigorous "strict scrutiny" standard.  See, <u>Gavin v. Branstad</u>, 122 F.3d 1081, 1090 (8th Cir. 1997)("Because neither a fundamental right nor a suspect classification is at issue here, we apply rational basis review"), cert. denied, 524 U.S. 955 (1998); <u>Phillips v. Norris</u>, 320 F.3d 844, 848 (8th Cir. 2003)(because prisoner-claimant "does not allege he was a member of a protected class or that a fundamental right was violated, he must show that 'similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest'"), quoting <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998).

from inmates at State-operated prisons.  Generally speaking, however, inmates at one

prison are not considered to be "similarly-situated" to inmates at other prisons, for

Equal Protection purposes.  See,  Klinger v. Department of Corrections, supra at 732

(inmates housed at different prisons were not similarly-situated for Equal Protection

purposes, because the prisons were "different institutions with different inmates each

operating with limited resources to fulfill different specific needs."); see also, Vasquez

v. Frank, 2005 WL 2740894 at *12 (W.D. Wis., October 21, 2005)(prisoner Equal

Protection claim failed because "inmates at other institutions and in other units are not

similarly situated to petitioner"), aff'd in part, vac'd in part, 209 Fed.Appx. 538 (7[th]

Cir. 2006); Polakoff v. Henderson , 370 F. Supp. 690, 694-95 (D.C.Ga. 1973) ("The

court knows of no statute or case stating that uniform policies are required at each and

every penitentiary within the federal prison system."), aff'd, 488 F.2d 977 (5th Cir.

1974).  Every penal institution is unique, and those who are responsible for operating

such institutions face unique challenges that require unique solutions.  Therefore, State

prison officials need not always ensure that all prisoners, at all institutions, are treated

precisely the same.

　　Furthermore, even if the inmates at PCF were deemed to be similarly-situated

to inmates at State-operated prisons for Equal Protection purposes, the Plaintiff's

- 15 -

Complaint identifies a rational basis for the allegedly different treatment of PCF inmates. The Plaintiff, himself, points out that PCF's disciplinary conditions, and practices, may discourage PCF inmates from deliberately violating prison rules, with the hope that their infractions will cause them to be transferred to a more desirable State-operated prison.[7] Since the Complaint, itself, shows a rational basis for the allegedly disparate disciplinary conditions and practices at issue, the Plaintiff has failed to plead an actionable Equal Protection claim.

C. <u>The Plaintiff's Motion to Amend The Complaint</u>. On October 3, 2007, the Plaintiff submitted a document entitled "Amended Complaint," see, <u>Docket No. 5</u>, which we indulgently construe as a Motion to Amend his Complaint. Specifically, the Plaintiff seeks to add Joan Fabian ("Fabian") as an additional named-Defendant and to add three (3) claims to his Complaint: 1) that, on transfer to PCF, inmates are not allowed to keep property that is permitted in State facilities, and must arrange to

---

[7]As explained by the Plaintiff:

> It is well known that once you are transferred to PCF there is no easy way back to MnDOC. 'Rumor' is MnDOC and PCF has [sic] diliberatly [sic] set up the DD time to sway MnDOC inmates from taking a[n] 'easy' way out of PCF.

<u>Complaint</u>, <u>Docket No. 1</u>, Statement of Claim, ¶ 27.

have the property "sent out" at their own expense if they wish to keep that item; 2) that inmates at PCF are not allowed work assignments during their first ninety (90) days, and that, when they are permitted to work, the wages are significantly lower than the wages at a State-operated facility; and 3) that the placement of electrical outlets in cells at PCF is inconvenient, and inmates are required to purchase extension cords in order to make efficient use of those outlets.   We have considered those additional allegations, and find that, were we to allow him to add those claims, they could not survive a preliminary screening under Title 28 U.S.C. §1915A.

As with the original Complaint, the Plaintiff lacks standing to bring any of the additional claims, as he has failed to allege that he has been directly impacted by the conditions that he describes.  See, Ellis v. Norris, supra at 1079.  Furthermore, turning to the merits of the Plaintiff's supplemental claims, we find that none of them states an actionable constitutional violation.  As to the Plaintiff's claim, that prisoners are not allowed to keep personal property on admission to PCF, and are forced either to abandon that property, or to dispose of it at their own expense, prisoners have no property interest in items that have been determined to be contraband by prison officials.  See, Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984), citing Board of Regents v. Roth, 408 U.S. 564, 576-78 (1972).

Furthermore, the "due process rights of prisoners and pretrial detainees [against the deprivation of their property without due process of law] are not absolute; they are subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution." Id., citing Bell v. Wolfish, 441 U.S. 520, 554 (1979). Here, the Plaintiff acknowledges that PCF has banned grey sweat pants, which purportedly are permitted in State facilities, and instead issues inmates sweats of a different color, see, Amended Complaint, supra at ¶9, which reflects a genuine penological interest in having inmates wear clothing that is a uniform color. See, Lyon v. Farrier, supra at 527 (no Due Process violation to confiscate clothing that does not conform to prison requirements). Moreover, here the Plaintiff does not complain that his property is being destroyed, but only that he is required to pay the cost of having those items, that have been banned at PCF, shipped or stored outside of the facility. See, Orebaugh v. Caspari, 910 F.2d 526, 527-28 (8th Cir. 1990) (prisoner failed to state a Due Process claim when prison officials permitted him either to send confiscated items home, or have them destroyed).

The Plaintiff also argues that inmates are not allowed to work for the first ninety (90) days of their stay at PCF, and then are paid wages that are lower than those paid to inmates at State facilities. However, the denial of employment opportunities to an

inmate does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See, <u>Callender v. Sioux City Residential Treatment Facility</u>, 88 F.3d 666 (8th Cir. 1996), citing <u>Sandin v. Conner</u>, supra at 484; see also, <u>Flittie v. Solem</u>, 827 F.2d 276, 278 (8th Cir. 1987) ("[I]nmates have no constitutional right to be assigned to a particular job."); <u>Lyon v. Farrier</u>, 727 F.2d 766, 769 (8th Cir. 1984)(finding that an inmate has no constitutional right to a prison job or to retain a specific prison job).

Finally, the Plaintiff's claim, that his rights have been violated by the failure of PCF to provide him with a cell that has been equipped with convenient electrical outlets, is plainly frivolous, and fails to state a claim that he has been subjected to an "atypical and significant hardship."  See,  <u>Sandin v. Conner</u>, supra at 484.

In sum, we conclude that the Plaintiff has failed to state a cause of action upon which relief can be granted, and that his action must be summarily dismissed pursuant to Title 28 U.S.C. § 1915A(b)(1).  Consequently, we are obligated to further recommend that the Plaintiff's application for leave to proceed IFP be denied, as moot.  Since we are summarily dismissing his action, we further recommend that the Plaintiff be relieved of paying the filing fee in this matter, and we recommend that the

dismissal of the Plaintiff's claims not count as a "strike" against the Plaintiff for the purposes of Title 28 U.S.C. §1915(g).

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Plaintiff's Complaint [Docket No. 1] be summarily dismissed pursuant to Title 28 U.S.C. §1915A(b)(1).

2.      That the Plaintiff's Application to Proceed Without Prepayment of Fees, [Docket No. 2] be denied, as moot.

3.      That the Plaintiff be relieved from paying the filing fee that would otherwise be due from him.

4.      That, irrespective of summary dismissal, the action not be counted as a "strike" for purposes of Title 28 U.S.C. §1915(g).


Dated:  October 11, 2007              s/Raymond L. Erickson
                                      Raymond L. Erickson
                                      CHIEF U.S. MAGISTRATE  JUDGE

### N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than October 26, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 26, 2007**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.